**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
AMARILLO DIVISION**



| | | |
|---|---|---|
| **AHI-TOWN PARC, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v,** | § | **CIVIL ACTION NO.** |
| | § | |
| **MULTI-HOUSING TAX CREDIT** | § | |
| **PARTNERS LII, L.P.,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## DEFENDANT'S ANSWER TO ORIGINAL PETITION AND COUNTERCLAIMS

Defendant Multi-Housing Tax Credit Partners LII, L.P. ("Limited Partner"), by and through its undersigned counsel, hereby asserts this Answer, Affirmative Defenses, and Counterclaims in response to the Original Petition of Plaintiff AHI Town-Parc, LLC ("AHI" or "General Partner") ("Petition"), and alleges as follows:

### I. SUMMARY AND INTRODUCTION

1.      Answering Paragraph 1 of the Petition, the Limited Partner admits that it and AHI are partners in a limited partnership that is known as Lone Star State Housing I, L.P. ("Partnership"), AHI is the managing general partner of the Partnership and the Limited Partner is the limited partner, and the Partnership owns and operates an affordable housing development in Amarillo, Texas ("Property") under section 42 of the LIHTC program (26 U.S.C. § 42).  The Limited Partner

denies any remaining allegations in Paragraph 1 that are not already admitted or qualified.

2.      Answering Paragraph 2 of the Petition, the Limited Partner admits that the parties' partnership agreement ("Agreement" or "LPA") includes an option for the General Partner to purchase the Limited Partner's interest in the Partnership ("LP Interest") under certain conditions set forth in the LPA, with such option to commence on the first day 6 months after the 15-year compliance period; the Limited Partner did receive tax credits (although that was not the only benefit or right granted to the Limited Partner in the LPA); and that the parties agreed on Lindsey Hannon of Novogradac & Co., to conduct an appraisal of the LP Interest under the Option, and Ms. Hannon did provide such an appraisal (though it was not improper, tainted, or invalid as the General Partner now alleges).  All other allegations in this paragraph contain a purported statement of law, legal conclusion, or argument to which no response is required; and to the extent any response is required, the Limited Partner denies all remaining allegations in Paragraph 2 that are not already admitted or qualified.

3.      Answering Paragraph 3 of the Petition, the Limited Partner admits that the General Partner is trying to avoid the appraisal and Option and that the General Partner disputes that it is so bound.  The remaining allegations of Paragraph 3 of the Petition contain purported statement of law, legal conclusion, or argument to which no response is required.  To the extent a response is required,

Defendant's Answer to Original Petition and Counterclaims                    Page 2

the Limited Partner denies Paragraph 3 as it applies to this matter and denies any

remaining allegations in Paragraph 3 not already admitted or qualified.

## II. DISCOVERY LEVEL

4.      Paragraph 4 of the Petition contains a purported statement of law,

legal conclusion, or argument to which no response is required.  To the extent a

response is required, the Limited Partner lacks knowledge or belief regarding

Plaintiff's intent to conduct discovery.

## III. PARTIES AND SERVICE

5.      Answering Paragraph 5 of the Petition, the Limited Partner admits

that publicly available information indicates that AHI is a Texas limited liability

company with its principal place of business in New Hampshire.

6.       Answering Paragraph 6 of the Petition, the Limited Partner admits

that it is a California limited partnership that may be served through its registered

agent, CSC-Lawyers Incorporating Service, and otherwise denies any remaining

allegations in Paragraph 6 not already admitted or qualified.

## IV. JURISDICTION AND VENUE

7.      Answering Paragraph 7 of the Petition, the Limited Partner admits

that it entered into a limited partnership agreement that concerns the Property,

which is located in Amarillo, Texas, and certain acts and incidents at issue in this

lawsuit occurred in Texas.  The remaining allegations of Paragraph 7 of the

Petition contain purported statements of law, legal conclusion, or argument to

which no response is required.  To the extent a response is required, the Limited

Partner denies Paragraph 7 as it applies to this matter and denies any remaining

allegations in Paragraph 7 not already admitted or qualified.

8.      Answering Paragraph 8 of the Petition, the Limited Partner admits

that certain acts and incidents at issue in this lawsuit occurred in Texas and that the

Property owned by the Partnership is in Amarillo.  The Limited Partner denies any

remaining allegations in Paragraph 8 not already admitted or qualified.

9.      Paragraph 9 contains purported statements of law, legal conclusion, or

argument to which no response is required.  To the extent a response is required,

the Limited Partner denies Paragraph 9 as it applies to this matter and denies any

remaining allegations in Paragraph 9 not already admitted or qualified.

## V. FACTUAL BACKGROUND

**A.      Background on the LIHTC program.**

10.      Answering Paragraph 10 of the Petition, the Limited Partner admits

that the Property was financed in part with Section 42 low-income housing tax

credits under the federal LIHTC program.  The Limited Partner denies any

remaining allegations in Paragraph 10 not already admitted or qualified.

11.      Paragraph 11 contains purported statements of law, legal conclusion,

argument, or speculation to which no response is required.  To the extent a

response is required, the Limited Partner denies Paragraph 11 as it applies to this

matter and denies any remaining allegations in Paragraph 11 not already admitted

or qualified.

12.     Answering Paragraph 12 of the Petition, the Limited Partner admits that under the LIHTC program, federal tax credits can be allocated to qualified low-income housing projects , and the owners of such properties can generally claim the tax credits annually over a period of ten years.  The Limited Partner denies any remaining allegations in Paragraph 12 not already admitted or qualified.

13.     Answering Paragraph 13 of the Petition, the Limited Partner admits that in certain LIHTC arrangements, a developer may apply for an award of low income housing tax credits and, if granted, the developer may enter into a limited partnership as a general partner with a limited partner that may be a tax credit fund. The Limited Partner denies any remaining allegations in Paragraph 13 not already admitted or qualified.

14.     Answering Paragraph 14 of the Petition, the Limited Partner admits that in some low-income housing projects, the project owner is a limited partnership or a limited liability company, in which a project sponsor acts as the general partner.  The Limited Partner denies any remaining allegations in Paragraph 14 not already admitted or qualified.

15.     Answering Paragraph 15 of the Petition, the Limited Partner admits that in some LIHTC partnerships, a general partner can provide certain guarantees, and can be compensated through substantial fees and an economic sharing agreement which would be set forth in the parties' partnership agreement.   The

Limited Partner denies any remaining allegations in Paragraph 15 not already admitted or qualified.

16.    Answering Paragraph 16 of the Petition, the Limited Partner admits that in some LIHTC partnerships, a general partner may have a right to purchase the Property pursuant to terms and conditions stated in the particular agreement or an option to purchase the limited partner's interests pursuant to terms or conditions stated in the agreement.  The Limited Partner denies any remaining allegations in Paragraph 16 that are not already admitted or qualified.

17.    Answering Paragraph 17 of the Petition, the Limited Partner admits that a limited partner may be allocated essentially all of the tax credits and other tax benefits available to the limited partnership entity if so stated in the applicable limited partnership agreement.  The Limited Partner denies any remaining allegations in Paragraph 17 that are not already admitted or qualified.

18.    Paragraph 18 contains purported statements of law, legal conclusion, or argument to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 18 as it applies to this matter and denies any remaining allegations in Paragraph 18 not already admitted or qualified.

19.    Answering Paragraph 19 of the Petition, the Limited Partner admits that while the allocation of tax credits and other benefits is one reason why an investor may invest, that is not the only reason, and the terms of the LPA govern the Limited Partner's anticipated rights and benefits.  The Limited Partner denies

any remaining allegations in Paragraph 19 not already admitted or qualified.

20.    Answering Paragraph 20 of the Petition, the Limited Partner admits that a limited partner may make a capital contribution based on the attributes of the property, and the economic sharing agreement and the rights granted to a limited partner set forth in the partnership agreement, which typically include tax credits, other tax benefits, fees, cash distributions, and substantial rights with respect to the operation of the partnership. The Limited Partner denies any remaining allegations in Paragraph 20 not already admitted or qualified.

21.    Answering Paragraph 21 of the Petition, the Limited Partner admits that LIHTC may be allocated as set forth in 26 U.S.C. § 42 and its attendant rules and regulations. The Limited Partner denies any remaining allegations in Paragraph 21 not already admitted or qualified.

22.    Paragraph 22 contains purported statements of law, legal conclusion, or argument relating to the LIHTC program, statute, rules and regulations to which no response is required. To the extent a response is required, the Limited Partner denies Paragraph 22 as it applies to this matter and denies any remaining allegations in Paragraph 22 not already admitted or qualified.

23.    Answering Paragraph 23 of the Petition, the Limited Partner admits that it is a limited partnership that serves as the Limited Partner of the Partnership. The Limited Partner denies any remaining allegations in Paragraph 23 not already admitted or qualified.

24.     Paragraph 24 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 24 as it applies to this matter and denies any remaining allegations in Paragraph 24 not already admitted or qualified.

25.     Paragraph 25 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 25 as it applies to this matter and denies any remaining allegations in Paragraph 25 not already admitted or qualified.

26.     Answering Paragraph 26 of the Petition, Highridge Costa, LLC is an indirect owner of the entity that is the general partner of the Limited Partner, as set forth in its concurrently filed notice of removal.   The Limited Partner denies any remaining allegations in Paragraph 26 not already admitted or qualified.

27.     Paragraph 27 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 27 as it applies to this matter and denies any remaining allegations in Paragraph 27 not already admitted or qualified.

28.     Paragraph 28 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a

response is required, the Limited Partner denies Paragraph 28 as it applies to this matter and denies any remaining allegations in Paragraph 28 not already admitted or qualified.

29.    Paragraph 29 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 29 as it applies to this matter and denies any remaining allegations in Paragraph 29 not already admitted or qualified.

30.    Paragraph 30 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 30 as it applies to this matter and denies any remaining allegations in Paragraph 30 not already admitted or qualified.

31.    Answering Paragraph 31 of the Petition, the Limited Partner admits that the parties' partnership agreement sets forth a purchase option in section 8.1 with respect to the LP Interest.  The Limited Partner denies any remaining allegations in Paragraph 26 not already admitted or qualified.

32.    Paragraph 32 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 32 as it applies to this matter and denies any remaining allegations in Paragraph 32 not already admitted

or qualified.

33.    Answering Paragraph 33 of the Petition, the Limited Partner denies the allegations in paragraph 33.

34.    Paragraph 34 of the Petition contains speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 34 as it applies to this matter and denies any remaining allegations in Paragraph 34 not already admitted or qualified.

35.    Paragraph 35 contains speculation to which no response is required. To the extent a response is required, the Limited Partner denies Paragraph 35 as it applies to this matter and denies any remaining allegations in Paragraph 35 not already admitted or qualified.

36.    Paragraph 36 contains speculation to which no response is required. To the extent a response is required, the Limited Partner denies Paragraph 36 as it applies to this matter and denies any remaining allegations in Paragraph 36 not already admitted or qualified.

**B.    The emergence of Aggregators.**

37.    Paragraph 37 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 37 as it applies to this matter and denies any remaining allegations in Paragraph 37 not already admitted or qualified.

38.     Paragraph 38 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 38 as it applies to this matter and denies any remaining allegations in Paragraph 38 not already admitted or qualified.

39.     Paragraph 39 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 39 as it applies to this matter and denies any remaining allegations in Paragraph 39 not already admitted or qualified.

40.     Paragraph 40 contains purported statements of law, legal conclusion, argument, or speculation to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 40 as it applies to this matter and denies any remaining allegations in Paragraph 40 not already admitted or qualified.

**C.     The limited partnership and the LPA at issue here.**

41.     Answering Paragraph 41 of the Petition, the Limited Partner admits that the operative limited partnership agreement for the Partnership refers to an agreement of limited partnership dated as of February 25, 2005, involving Lone Star State Development I, LLC and Christopher C. Finlay as withdrawing limited partner.   The Limited Partner denies any remaining allegations in Paragraph 41

that are not already admitted or qualified.

42.     Answering Paragraph 42 of the Petition, the Limited Partner admits that section 2.6 of the LPA refers to the purpose of the Partnership as including among several other purposes acquiring and developing the Property.  The Limited Partner denies any remaining allegations in Paragraph 42 that are not already admitted or qualified.

43.     Answering Paragraph 43 of the Petition, the Limited Partner admits that the LPA was entered into on or about August 10, 2006 between the Managing General Partner, Maureen Moulton d/b/a Hearts for Homes, and Multi-Housing Investments, LLC, as limited partner, and section 16.1states, "This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State," defined as the State of Texas.  The Limited Partner denies any remaining allegations in Paragraph 43 that are not already admitted or qualified.

44.     Answering Paragraph 44 of the Petition, the allegations of Paragraph 44 are admitted.

45.     Answering Paragraph 45 of the Petition, the Limited Partner admits that the parties entered into a Second Amendment to the LPA on or about November 30, 2006, and such document speaks for itself.  The Limited Partner denies any remaining allegations in Paragraph 45 that are not already admitted or qualified.

46.     Answering Paragraph 46 of the Petition, the Limited Partner admits

that the parties entered into a Third Amendment to the LPA on or about October 22, 2009, in which Lone Star State Development I, LLC withdrew and Plaintiff AHI-TP became the managing general partner. The Limited Partner denies any remaining allegations in Paragraph 46 that are not already admitted or qualified.

47.    Answering Paragraph 47 of the Petition, the Limited Partner admits that the parties entered into a Fourth Amendment to the LPA on or about September 10, 2015, and such document speaks for itself. The Limited Partner denies any remaining allegations in Paragraph 47 that are not already admitted or qualified.

48.    Answering Paragraph 48 the Limited Partner admits that copies of the LPA and amendments are attached as Exhibit 1. The Limited Partner denies any remaining allegations in Paragraph 48 that are not already admitted or qualified.

**D.    The Option to purchase MHTCP's LP Interest.**

49.    Answering Paragraph 49 of the Petition, the Limited Partner admits that Section 8.1 of the LPA sets forth an option for the General Partner to purchase the LP Interest based on terms and conditions in the contract, including the terms that the price shall be the "greater of" the fair market value of the LP Interest "as determined by appraisal conducted by a member of the Appraisal Institute with not less than ten years experience appraising Low Income Housing projects and agreed upon by the Partners," among other terms, or an alternative price. The Limited Partner denies any remaining allegations in Paragraph 49 that are not already

Defendant's Answer to Original Petition and Counterclaims                    Page 13

admitted or qualified.

50.    Answering Paragraph 50 of the Petition, the Limited Partner admits that section 8.1E of the LPA states in part that the closing of the sale of the LP Interest under the Option "shall take place" within 120 days after the General Partner gives notice as stated in the agreement.  The Limited Partner denies any remaining allegations in Paragraph 50 that are not already admitted or qualified.

**E.    The Option is exercised, and Novogradac provides a tainted appraisal.**

51.    Answering Paragraph 51 of the Petition, the Limited Partner admits that the General Partner gave notice of exercise of the Option on or about July 13, 2023.  The Limited Partner denies any remaining allegations in Paragraph 51 that are not already admitted or qualified.

52.    Answering Paragraph 52 of the Petition, the Limited Partner admits that the parties signed an engagement letter with Lindsey Hannon of Novogradac & Co. ("Novogradac") in September 2023, to value the LP Interest under the Option.  The Limited Partner lacks knowledge or information sufficient to form a belief regarding any remaining allegations in Paragraph 52 and otherwise denies any remaining allegations in Paragraph 52 not already admitted or qualified.

53.    Answering Paragraph 53 of the Petition, the Limited Partner admits that Ms. Hannon issued appraisals of the LP Interest in December 2023 and January 2024 .  The Limited Partner lacks knowledge or information sufficient to form a belief regarding any remaining allegations in Paragraph 53 and otherwise

denies any remaining allegations in Paragraph 53 not already admitted or qualified.

54.    Answering Paragraph 54 of the Petition, the Limited Partner denies the allegations of Paragraph 54.

55.    Answering Paragraph 55 of the Petition, the Limited Partner admits that the language quoted in paragraph 55 appears in parts of section 8.1C but otherwise denies the remaining allegations in Paragraph 55.

56.    Answering Paragraph 56 of the Petition, the Limited Partner denies the allegations in Paragraph 56.

57.    Answering Paragraph 57 of the Petition, the Limited Partner denies the allegations in Paragraph 57.

58.    Answering Paragraph 58 of the Petition, the Limited Partner denies the allegations in Paragraph 58.

59.    Answering Paragraph 59 of the Petition, the Limited Partner denies the allegations in Paragraph 59.

60.    Answering Paragraph 60 of the Petition, the Limited Partner admits that the General Partner raised certain objections to the Appraisal; but otherwise denies any remaining allegations in Paragraph 60 that are not already admitted or qualified.

61.    Answering Paragraph 61 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 61 and otherwise denies any remaining allegations in Paragraph 61 not

already admitted or qualified.

62.    Answering Paragraph 62 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 62 and based thereon denies the allegations in Paragraph 62.

63.    Answering Paragraph 63 of the Petition, the Limited Partner denies the allegations in Paragraph 63.

64.    Answering Paragraph 64 of the Petition, the Limited Partner denies the allegations in Paragraph 64.

65.    Answering Paragraph 65 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 65 and otherwise denies any remaining allegations in Paragraph 65 not already admitted or qualified.

66.    Answering Paragraph 66 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 66 and based thereon denies the allegations in Paragraph 66.

67.    Answering Paragraph 67 of the Petition, the Limited Partner admits that it proposed Brad Weinberg of Novogradac to value the LP Interest before the parties agreed on Lindsey Hannon, and upon information and belief he is located in or around San Francisco, California.  The Limited Partner otherwise denies any remaining allegations in Paragraph 67 not already admitted or qualified.

68.    Answering Paragraph 68 of the Petition, the Limited Partner admits

that the General Partner, through counsel, asked the Limited Partner to confirm that Brad Weinberg would be "working with/delegating this to the TX contact [omitted] if engaged?" and the parties agreed upon Lindsey Hannon.  The Limited Partner otherwise denies any remaining allegations in Paragraph 68 not already admitted or qualified.

69.    Answering Paragraph 69 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 69 and otherwise denies any remaining allegations in Paragraph 69 not already admitted or qualified.

70.    Answering Paragraph 70 of the Petition, the Limited Partner admits that the General Partner agreed to Ms. Hannon as the appraiser and lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 70 and otherwise denies any remaining allegations in Paragraph 70 not already admitted or qualified.

71.    Answering Paragraph 71 of the Petition, the Limited Partner lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 71 and otherwise denies any remaining allegations in Paragraph 71 not already admitted or qualified.

72.    Paragraph 72 of the Petition contains a purported statement of law, legal conclusion, or argument to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 72 as it applies to this

matter and denies any remaining allegations in Paragraph 72 not already admitted or qualified.

73.     Answering Paragraph 73 of the Petition, the Limited Partner admits that Ms. Hannon provided appraisals in December 2023 and the Appraisal on or around January 10, 2024.  The Limited Partner otherwise denies any remaining allegations in Paragraph 73 not already admitted or qualified.

74.     Answering Paragraph 74 of the Petition, the Limited Partner admits that after the parties had agreed to and engaged Ms. Hannon, and the Appraisal was issued, the General Partner demanded a "re-do" and demanded to extend dates relating to sections 8.1 and 8.2 of the LPA.  The Limited Partner otherwise denies any remaining allegations in Paragraph 74 not already admitted or qualified.

75.     Answering Paragraph 75 of the Petition, the Limited Partner admits that it contends that the Appraisal by Lindsey Hannon is binding and determines the LP Interest value for purposes of the Option price. The Limited Partner otherwise denies any remaining allegations in Paragraph 75 not already admitted or qualified.

**F.      The dispute.**

76.     Answering Paragraph 76 of the Petition, the Limited Partner admits that the General Partner, after agreeing to Ms. Hannon and after she issued draft and final appraisals, later claimed alleged conflicts as a basis to avoid her conclusion.  The Limited Partner lacks knowledge or information sufficient to

form a belief regarding the remaining allegations in Paragraph 76 and otherwise

denies any remaining allegations in Paragraph 76 not already admitted or qualified.

77.     Answering Paragraph 77 of the Petition, the Limited Partner admits

that it has contended, and continues to allege, that the Appraisal is binding and not

"flawed," and that the General Partner cannot avoid it.  The Limited Partner

otherwise denies any remaining allegations in Paragraph 77 not already admitted or

qualified.

78.     Answering Paragraph 78 of the Petition the Limited Partner admits

that it has contended, and continues to allege, that the Appraisal is binding and the

General Partner is not entitled to a "re-do" of the Appraisal as it contends.  The

Limited Partner otherwise denies any remaining allegations in Paragraph 78 not

already admitted or qualified.

79.     Answering Paragraph 79 of the Petition, the Limited Partner admits

that it has contended, and continues to allege, that the General Partner is bound by

the Appraisal and its concluded-to value of $2.4 million for the LP Interest.  The

Limited Partner otherwise denies any remaining allegations in Paragraph 79 not

already admitted or qualified.

80.     Answering Paragraph 80 of the Petition, the Limited Partner admits

that it has contended, and continues to allege, that the General Partner is bound by

the Appraisal.  The Limited Partner otherwise denies the remaining allegations in

Paragraph 80 not already admitted or qualified.

81.     Answering Paragraph 81 of the Petition, the Limited Partner admits that it has contended, and continues to allege, that the General Partner is bound by the Appraisal.  The Limited Partner otherwise denies any remaining allegations in Paragraph 81 not already admitted or qualified.

82.     Paragraph 82 of the Petition contains purported statements of law, legal conclusions, or argument to which no response is required.  To the extent a response is required, the Limited Partner denies Paragraph 83 as it applies to this matter and denies any remaining allegations in Paragraph 83 not already admitted or qualified.

83.     Answering Paragraph 83 of the Petition, the Limited Partner admits that the parties have a dispute regarding the Limited Partner's contention that the General Partner is bound by the Appraisal and its value, and in the alternative, that the Limited Partner can force a sale under section 8.2.  The remaining allegations contains purported statements of law, legal conclusions, or argument to which no response is required.  To the extent a response is required, the Limited Partner denies any remaining allegations in Paragraph 83 not already admitted or qualified.

## VI. CLAIMS AND CAUSES OF ACTION

### Request for Declaratory Judgment

84.     The Limited Partner repeats and restates every foregoing answer and denial as if fully set forth herein.

85.     Paragraph 85 contains purported statements of law, legal conclusions,

or argument to which no response is required.  To the extent a response is required,

the Limited Partner denies Paragraph 85 as it applies to this matter and denies any

remaining allegations in Paragraph 85 not already admitted or qualified.

86.    Answering Paragraph 86 of the Petition, the Limited Partner denies

that the General Partner is entitled to any of the declaratory relief requested by the

General Partner in paragraph 86(a)-(g), or otherwise in its Petition.

87.    Answering Paragraph 87 of the Petition, the Limited Partner denies

that the General Partner should be awarded any attorneys' fees or costs.

## PRAYER & REQUEST FOR RELIEF

In response to the "Prayer & Request for Relief", the Limited Partner

responds that the allegations in these paragraphs constitute requests for relief to

which no response is required. To the extent that the "Prayer & Request for Relief"

contains any factual allegations, the Limited Partner denies each such allegation.

The Limited Partner further denies that AHI is entitled to any relief, and requests

that this Court deny each request for relief contained in the Petition.

## THE LIMITED PARTNER'S AFFIRMATIVE DEFENSES

Discovery has not begun in this matter.  Accordingly, the Limited Partner

sets forth the following defenses to this matter so as not to waive such defenses and

to preserve such defenses in this case.  By alleging the following separate and

affirmative defenses, it is not in any way agreeing or conceding that it has the

burden of proof or the burden of persuasion on any of these matters.

1.    AHI's claims are barred because it cannot state a claim upon which relief may be granted.

2.    AHI's claims are barred by equity.  Among other things, and as alleged above, AHI engaged in improper and inequitable conduct that precludes it from obtaining any relief, including by agreeing for months to be bound by the Appraisal, and then waiting until after it was issued, to then contend that it was allegedly tainted or flawed, to try to avoid it.

3.    AHI's claims are barred by its unclean hands.

4.    AHI's claims are barred because AHI has not complied with the LPA.

5.    AHI's claims are barred by estoppel, laches, and waiver.  Among other things, and as alleged herein, the General Partner agreed in around September 2023 to engage Lindsey Hannon of Novogradac, and waited until after she had issued drafts and a final appraisal, and communicated with her on an improper *ex parte* basis, before belatedly arguing that it was invalid.

6.    AHI's claims are barred by contractual provisions, first breach rule, and implied covenant of good faith and fair dealing.

7.    AHI's claims are barred by the Limited Partner's good faith.

8.    The Limited Partner reserves the right to amend and/or supplement these Affirmative Defenses based upon discovery and/or trial in this matter.

## COUNTERCLAIMS

1.      Defendant and Counter-Claimant Multi-Housing Tax Credit Partners LII ("Limited Partner") counterclaims and alleges against AHI-Town Parc, LLC ("General Partner" or "AHI") as follows:

2.      The Limited Partner is a California limited partnership that is authorized to do business in California.

3.      The Limited Partner is informed and believes that the General Partner is a Texas limited liability company with its principal place of business in Bedford, New Hampshire.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

5.      On information and belief, and as alleged previously, the General Partner, AHI-Town Parc, LLC is a Texas limited liability company with one member that is a North Carolina limited liability company; and the sole member of that North Carolina LLC is a natural person who is a New Hampshire citizen.

6.      As alleged previously and in its concurrent notice of removal, unlike the General Partner, the Limited Partner is not a citizen of New Hampshire or Texas.  The Limited Partner is a California limited partnership that consists of one general partner and one limited partner, and as described in the concurrent notice, the underlying partners and/or members of the partners, and those underlying

partners and/or members, are citizens of California and several other states, but are not citizens of New Hampshire or Texas.

7.      The amount in controversy in this action exceeds the value of $75,000, as the General Partner seeks to avoid paying the $2.4 million value of the LP Interest as determined by the agreed-upon appraiser; and attorneys' fees have been requested.

8.      Thus, diversity jurisdiction exists under 28 U.S.C. § 1332 given the diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.

9.      Venue is proper in this District because on information and belief it is alleged that the General Partner resides in this District and has its principal place of business here, and the Property owned by the Partnership is located in this District. *See* 28 U.S.C. § 1291(b)(1), (2).

## COMMON ALLEGATIONS

10.     The parties are partners in a low-income housing tax credit ("LIHTC") partnership that owns an affordable housing property in Amarillo, Texas, known as Town Parc at Amarillo ("Property")

11.     The General Partner and an affiliate executed the limited partnership agreement in August 2006, and the Limited Partner became a partner in the Partnership a few months later, on or around November 17, 2006.

12.     In 2006, the Limited Partner contributed $8,659,080 that was used to develop the Property.  In exchange for that sizable capital contribution, the parties agreed that the Limited Partner was entitled to the many significant economic and legal rights set forth in the parties' limited partnership agreement ("LPA").  Not only was the Limited Partner entitled to receive tax credits and other tax benefits, but it also was entitled to annual asset management fees, a share of cash flow from Project operations, the right to require the Partnership to sell the Property in 2024, and the right to a share of cash proceeds from a sale or refinancing of the Property.

13.     The LPA stated that the General Partner had an option to purchase the Limited Partner's Interest ("LP Interest") in the Partnership based on certain terms and conditions set forth in the parties' agreement.  *See* LPA, § 8.1.

14.     Among other things, under section 8.1 of the LPA, the Option period during which the General Partner could exercise the Option began the first day six months after the 15-year compliance period (during which the Property was to meet certain affordability requirements), and would last for six months.

15.     The compliance period for the Property ended on or about December 31, 2022.

16.     Section 8.1B of the LPA stated that if the General Partner "elects to exercise the Option it shall do so by delivering written notice of its election to do so to the Limited Partner within" the six-month Option period.

17.     Section 8.1 also stated that the Option price for the LP Interest was to be the greater of either the fair market value of the LP Interest, as determined by an appraiser who met specific credentials, including being a member of The Appraisal Institute, and who was agreed upon by the Partners (LPA, § 8.1C(1)); or an alternative price based on a formula stated in section 8.1C(2).[1]

18.     Under Section 8.2 of the LPA, the Limited Partner had the right, beginning 16 months after the expiration of the 15-year compliance period, to request the Partnership to sell the Project, subject to an extended use agreement, and the Partnership would be required to do so pursuant to the terms of section 8.2, and distribute to the Limited Partner its share of net sales proceeds.

19.     In May of 2023, the General Partner informed the Limited Partner that it intended to exercise the Option once the Option period began, on July 1, 2023.

20.     The parties then began discussing the selection of a qualified appraiser to determine the Option price, once the General Partner exercised the Option.

21.     On June 6, 2023, the General Partner's representative invited the Limited Partner to propose for the Option any appraisers whom "you've used in TX", i.e., inviting the Limited Partner to propose appraisers with whom the Limited Partner previously had worked.

---

[1] The Limited Partner is informed and believes and on that basis alleges that the parties in this action do not dispute that the appraised fair market value of the LP Interest will be greater than the alternative price, so that the appraised value of the interest will be the Option price.

22.    On July 13, 2023, the General Partner sent a notice of exercise of the Option under section 8.1 of the LPA.

23.    In August 2023, the Limited Partner proposed an appraiser named Brad Weinberg of Novogradac & Co., for the Option.  Novogradac is one of the nation's preeminent LIHTC consulting and accounting firms.

24.    On or around August 17, 2023, the General Partner's outside counsel stated to the Limited Partner, "We agree using Novogradac is a great idea." (emphasis added).  The General Partner's counsel also suggested that another appraiser at Novogradac who had a Dallas office could value the LP Interest for the Option.

25.    On August 23, 2023, the General Partner's outside counsel specifically asked the Limited Partner to confirm that Mr. Weinberg "would be working with / delegating this to the TX contact [the other Novogradac appraiser that the General Partner suggested] on this if engaged?  Typically, there is just a general preference to have a local office involved."

26.    As part of these discussions regarding engaging an appraiser, the Limited Partner expressly requested that all communications with the appraiser be joint, i.e., that both parties copy or include the other party on all communications with the agreed-upon appraiser.

27.    In September 2023, the General Partner and Limited Partner agreed to engage Lindsey Hannon of Novogradac, who was based in Texas, to value the LP

Defendant's Answer to Original Petition and Counterclaims                    Page 27

Interest, and signed an engagement letter with Ms. Hannon on or about September 21, 2023.

28.     The engagement letter stated that "[a]ll opinions will be unbiased and objective with regard to our analyses and conclusions," and "will conform to the generally accepted appraisal standards as promulgated by the National Association of Certified Valuators and Analysts (NACVA) and as outlined in the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board (ASB) and the Appraisal Foundation, as well as the Appraisal Institute."

29.     At no time before or after Ms. Hannon was engaged to determine the Option price did the General Partner ever ask Ms. Hannon or anyone else at Novogradac to identify any prior work done for the Limited Partner; nor did the General Partner ask the Limited Partner to disclose any services that Novogradac has provided to the Limited Partner.  Similarly, neither the General Partner nor its counsel disclosed at any time whether Novogradac had or had not performed services for the General Partner or its affiliates or counsel.

30.     On information and belief, the Limited Partner alleges that the General Partner and/or its affiliates, and/or the General Partner's outside counsel (the Shackelford firm) had engaged Novogradac in the past on other LIHTC matters.

31.    The Limited Partner has requested in writing that the General Partner and/or its affiliates and counsel disclose their prior engagements with Novogradac, but they have failed to do so.

32.     Neither the General Partner nor its affiliates or counsel has denied that they have engaged Novogradac in the past.

33.    Unbeknownst to the Limited Partner at the time, the General Partner and/or its counsel had separate communications with Ms. Hannon about the appraisal of the Limited Partner's Interest both before and after Ms. Hannon was engaged to value the LP Interest.

34.    After jointly engaging Ms. Hannon to value the LP Interest, the parties proceeded over the next several weeks to provide her with the information and materials needed to complete the appraisal.

35.    On December 5, 2023, Ms. Hannon provided the parties with an appraisal that valued the LP Interest at $2,360,000.  The General Partner's counsel separately communicated with Ms. Hannon regarding alleged deficiencies in the appraisal.  The General Partner to this date has not explained why it chose to correspond with Ms. Hannon on an *ex parte* basis.

36.    In another *ex parte* email to Ms. Hannon on December 8, 2023, the General Partner's counsel sent questions and comments to her, and requested that Ms. Hannon revise the appraisal.  Ms. Hannon responded to counsel's questions and comments on December 12, 2023, made the requested revisions regarding

income, and circulated a revised appraisal on December 20, 2023, which again

valued the Limited Partner's Interest at $2,360,000.

37.     On January 10, 2024, Ms. Hannon circulated a final appraisal on

January 10, 2024 ("Appraisal"), which concluded that the value of the LP Interest

was $2.4 million.

38.     The General Partner was bound to close on the Option and purchase

the LP Interest for $2.4 million, based on the Appraisal.

39.     After the Appraisal issued, however, the General Partner claimed for

the first time that it had become aware that Novogradac "represents Costa [an

affiliate of the Limited Partner] on matters unrelated to Town Parc" and such

"conflict of interest was not disclosed prior to Novogradac being engaged."

40.     However, the Limited Partner is informed and believes that not only

has the General Partner or its affiliates, or its counsel, previously worked with

Novogradac on other LIHTC matters; but the General Partner also knew before the

Appraisal was issued that Novogradac had done work for one or more affiliates of

the Limited Partner; and the General Partner waited until after the Appraisal was

issued to assert any alleged objection based on bias.

41.     Moreover, the Appraisal included a signed certification by Ms.

Hannon certifying the following, among other things:

- "We have prepared no work, as an appraiser or in another capacity, on

   the Subject property within the last three years";

Defendant's Answer to Original Petition and Counterclaims          Page 30

- "The reported analyses, opinions, and conclusions … are our personal, impartial, and unbiased professional analyses, opinion, and conclusions";

- "We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved";

- "We have performed no other services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment";

- "We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment".

42.     The General Partner is bound under the LPA and Texas law to close on its purchase the LP Interest at the price determined by the Appraisal, for $2.4 million.

## FIRST COUNTERCLAIM –

## Specific Performance of the Option Against AHI

43.     The Limited Partner incorporates each and every allegation set forth above as if set forth herein.

44.     The parties to this action are parties to the written limited partnership agreement, which remains a valid and binding agreement.

45.     The Limited Partner has performed all obligations required of it under the Option, or has been excused from doing so by the General Partner's non-performance.

46.     The General Partner exercised the Option to purchase the LP Interest contained in section 8.1 of the LPA.

47.     The parties agreed to engage Lindsey Hannon to appraise the LP Interest pursuant to the Option, and she concluded to a value of $2.4 million for the LP Interest, which is the Option price.

48.     The Limited Partner is and has been ready, willing and able to perform under the Option, and has never repudiated or breached the agreement.

49.     The Limited Partner seeks specific performance of the Option, i.e., an Order requiring that the General Partner pay the Option price of $2.4 million, as determined by the Appraisal, for the LP Interest.

50.     In the alternative to specific performance, the General Partner's breach has caused damages to the Limited Partner.  In so seeking this in the alternative, the Limited Partner is not admitting that any such monetary damages would be an adequate remedy.

## SECOND COUNTERCLAIM –

## Declaratory Judgment Against AHI

51.     The Limited Partner incorporates each and every allegation set forth above as if set forth herein.

Defendant's Answer to Original Petition and Counterclaims                    Page 32

52.    The parties to this action are parties to the written limited partnership agreement, which remains a valid and binding agreement.

53.    A dispute exists between the parties relating to the Option and the Appraisal.

54.    The Limited Partner seeks a declaratory judgment that the General Partner is bound by the Appraisal and must pay the Limited Partner $2.4 million as the Option price.

55.    In the alternative, if the General Partner is held to not be bound to close on the Option and pay the Option price of $2.4 million to the Limited Partner, the Limited Partner seeks a declaratory judgment that it may exercise at any time after April 30, 2024, its contractual right to request and require a sale of the Property as set forth in section 8.2 of the LPA, and the General Partner ordered to cooperate fully in any such sale request.

## PRAYER FOR RELIEF

Wherefore the Limited Partner prays for relief as follows:

1.  That judgment be entered in its favor, and against AHI, on AHI's claims against it, and on the Limited Partner's counterclaims against AHI;

2.  For attorneys' fees and costs incurred, as permitted by the parties' limited partnership agreement, common law, and/or statute, in an amount to be determined;

3.  Such other and further relief as the Court deems just and appropriate.

DATED: May 16, 2024

Respectfully submitted,

By:       */s/ Cathy T. Moses*

EDWARD F. QUIGLEY *(PRO HAC VICE FORTHCOMING)*
California Bar No. 175228
equigley@coxcastle.com
CATHY T. MOSES *(PRO HAC VICE FORTHCOMING)*
California Bar No. 254791
cmoses@coxcastle.com
**COX CASTLE**
2029 Century Park East
Suite 2100
Los Angeles, California 90067-3284
Telephone: 310-284-2200
Facsimile: 817-549-0053


*/s/ Sidney T. Lange*

SIDNEY T. LANGE
Texas Bar No. 24002449
slange@viteklange.com
**VITEK LANGE PLLC**
300 Throckmorton St., Suite 650
Fort Worth, Texas 76102
Telephone: 817-885-5610
Facsimile: 817-549-0053

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record on this 16th day of May, 2024, via E-Service.


*/s/ Sidney T. Lange*

SIDNEY T. LANGE